# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Petitioner, | ) | Case No. 08 CR 669 |
| | ) | |
| v. | ) | Judge David H. Coar |
| | ) | |
| **CHRISTOPHER WEST,** *et al.*, | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| Respondents. | ) | |

## MEMORANDUM OPINION AND ORDER

The Government of the United States of America ("the Government") indicted, among others, John Ramin ("John") and Tahir Ramin ("Tahir") on various charges of conspiracy to commit bribery under 18 U.S.C. § 371, conspiracy to commit mail fraud under 18 U.S.C. § 1349, and bribery of public officials under 18 U.S.C. § 201(b)(1)(A)–(C). Currently before this Court is the Government's Motion in Limine to Exclude Improper Examination, Evidence, and Argument Regarding Economic Duress ("Government's Motion" or "Motion") (Dckt. 355). FED. R. CRIM. P. 12(b). This Court rules on this Motion under Judge David H. Coar's referral of this Motion pursuant to Local Rule 72.1. For the reasons stated below, the Court grants the Government's Motion.

### I. Background

John and Tahir were contractors in Afghanistan whom the Government has alleged engaged in bribery, conspiracy, and mail fraud. (Superceding Indictment ¶¶ 4, 8, 27, 70, 107,

110.) Among the others charged in the superceding indictment was Christopher West ("West"), an Army Major with the Illinois National Guard 33d Areas Support Group, who was deployed at Bagram Airfield ("Bagram") in Afghanistan.[1] (*Id.* at ¶ 1.) At Bagram, West had various duties, including acquiring bunkers and barriers to be used on the airfield. (*Id.* at ¶ 2.)

As to the charges against the Ramins, the Government indicted them based on acts occurring in two different time periods. According to the superceding indictment, the first occurred between September and November of 2004, when John and Tahir allegedly paid $30,000.00 to West (and others) in return for the award of a bunkers and barriers contract. (*Id.* at 27.) The second act or series of acts took place between July 2004 and January 2005. (*Id.* at 30.) The Government alleges that, during this time, Tahir and John fraudulently inflated the number of bunkers and barriers delivered to Bagram, resulting in overpayments from which John and Tahir profited.[2] (*Id.*) The charges of mail fraud and conspiracy to commit bribery involve facts relating to these incidents. (*See id.* at 8–25, 70–106, 110–19.)

## II. Discussion

The issue raised by the Government's Motion relates to the use of economic duress as a defense to the charges against the Ramins. The Government argues that economic duress or coercion[3] is never an affirmative defense to a bribery or mail fraud, and that *Dixon v. United*

---

[1] West has since pled guilty to certain crimes.

[2] Other "uncharged misconduct" remains at issue but is not the subject of this Motion. (Defs.' Resp. 2.)

[3] In this Opinion, the Court will use the terms "economic duress" and "economic
(continued...)

*States*, 548 U.S. 1 (2006), foreclosed the possibility of economic coercion negating the intent required for a criminal act. Defendants argue just the opposite: economic coercion is a defense to bribery because it negates the specific intent required to commit that crime. (Defs.' Resp. 6–8.) For support, Defendants cite *United States v. Toney*, 27 F.3d 1245 (7th Cir. 1994); *United States v. McPartlin*, 595 F.2d 1321 (7th Cir. 1979), *cert. denied* 444 U.S. 833 (1979); and *United States v. Peskin*, 527 F.2d 71 (7th Cir. 1975).

Defendants also argue against the Government's Motion by treating "coercion" and "extortion" as identical defenses that "center on fear of economic . . . harm." (Defs.' Resp. 3 n.2.) To that end, Defendants contend that the Hobbs Act, 18 U.S.C. § 1951, supports the position that extortion, which may be accomplished by threatening economic harm or loss, is a defense to bribery. (Defs.' Resp. 11 (citing *United States v. Crockett*, 979 F.2d 1204, 1212 (7th Cir. 1992).) In the first place, extortion is not a defense to criminal conduct—it is a type of criminal conduct, and "there is no reason that conduct giving rise to criminal liability for extortion should necessarily provide a criminal defense for the reciprocal party." *McPartlin*, 595 F.2d at 1340 n.21; *United States v. Colacurcio*, 659 F.2d 684, 690 (5th Cir. 1981) ("[A]ppellants' insistence that extortion can be a defense to bribery is incorrect."). Thus, just as the Seventh Circuit did not "see the relevance of [the Hobbs Act]" in *McPartlin*, this court fails to see its relevance here. 595 F.2d at 1340 n.21.

Additionally, the cases show that the defense of economic duress, when sometimes erroneously labeled "extortion," is no different from it. *See Peskin*, 527 F.2d at 83–84;

---

[3](...continued)
coercion" interchangeably.

*McPartlin*, 595 F.2d at 1338–40; *see also United States v. Lisinski*, 728 F.2d 887, 892 (7th Cir. 1984) (noting that "[b]ribery and extortion are [crimes that are] not mutually exclusive"). In *Peskin*, for example, the court examined a proposed jury instruction that read: "'Unless the extortion is so overpowering as to negate the criminal intent of wilfulness [*sic*], it is not a total defense to bribery charges.'" 527 F.2d at 83. Although the jury instructions used the term "extortion," it was referring to economic coercion that defendant would suffer under the circumstances—i.e., that the economic harm threatened was so overpowering that it would negate intent. *Id.*

Defendants argue that, because the *Peskin* court left the jury instruction undisturbed, the court held that economic coercion was a valid defense to bribery. (Defs.' Resp. 13.) This erroneous conclusion neglects important details of the court's decision. In the first instance, the issue before the Seventh Circuit was whether the jury instruction was proper under *Illinois law*. *Id.* at 83–84. This case, by contrast, involves federal law. Furthermore, while the court held this instruction was not reversible error, it did so because, under the facts presented, "where a discretionary or legislative decision on zoning has been requested, the withholding of such action until a money demand is met could not negate the intent (to influence the performance of an official act) required by the Illinois bribery statue." *Id.* at 84.

Defendants also cite *McPartlin* to support their claim that economic coercion is a recognized defense to bribery. They are wrong to do so. In *McPartlin*, the Seventh Circuit reviewed jury instructions on the defense of economic coercion. 595 F.2d at 1338–39. When deciding various issues, the court stated it would "assume[,] *without deciding*, that as the instruction states, *under Illinois law*, if one who pays a bribe is or believes himself to be 'legally

entitled' to have the official take the action induced by the bribe, 'then the fear of economic harm from not receiving it may be sufficient to render the act of payment *involuntary*.'" *Id.* at 1339–40 (emphases added). This case therefore fails to support Defendants' argument for three different reasons. First, the court did not decide whether economic coercion could be a defense to bribery. Second, the court assumed—but did not decide—that the defense existed under Illinois, not federal, law. Thus, even if the Seventh Circuit had ruled on the issue, that ruling would not govern the federal law in this case. Finally, the instruction—which, as noted, the Seventh Circuit declined to rule on—did not state that the defense negated intent; it merely stated that economic coercion rendered the defendant's acts involuntary. Voluntariness and intent are two different legal requirements.

As to the last Seventh Circuit case cited by Defendants, they argue that "the [G]overnment wholly ignores the discussion in *Toney* regarding economic coercion, focusing only on physical duress." (Defs.' Resp. 13.) But *Toney* did not involve a defense of economic coercion. The defendant in *Toney* was charged with illegal possession of a firearm. 27 F.3d at 1247–48. The defendant argued that he took possession of the gun from his girlfriend to prevent her from committing suicide. *Id.* at 1248.

Defendants cite a page in *Toney* on which the court mentioned *United States v. Lee*, 846 F.2d 531 (9th Cir. 1988), to support their claim that *Toney* made a holding as to economic coercion. (Defs.' Resp. 13 (citing *Toney*, 27 F.3d at 1251).) Again, this assertion is misguided. The Seventh Circuit did not adopt *Lee* for the proposition that economic coercion is a defense to

bribery—as noted above, bribery and economic coercion were not at issue in *Toney*.[4] The court cited *Lee* to support the idea that, depending on the *mens rea* required to commit an offense, coercion could be either an affirmative or a substantive defense. *Id.* In any case, *Lee* does not stand for the proposition that economic coercion can negate the specific intent required for bribery.[5]

None of these cases—*Peskin*, *McFarlin*, and *Toney*—hold that economic duress can act as a defense to bribery, either by affirmatively excusing the conduct or by negating the "intent" element of the offense. That leads the Court to the precedent of other circuits. It makes sense to start with *United States v. Lee*, which the Government contends stands for the proposition that economic duress is not a recognized defense. (Government's Mot. 5.) *Lee* criticized—but stopped short of holding—that economic coercion cannot be a defense to, or negate the intent required to commit, bribery. 846 F.2d at 534 n.1. It did, though, express misgivings about the viability of such a defense. *Id.*

---

[4] In *Toney*, the Seventh Circuit held that coercion (i.e., duress) could be a substantive defense that the government must disprove beyond a reasonable doubt. 27 F.3d at 1252. But that holding has been abrogated by the Supreme Court's decision in *Dixon*, 548 U.S. at 5–7, which this Court discusses *infra*.

[5] *Lee* did not make a holding as to the defense of economic coercion. Instead, the Ninth Circuit expressly declined to decide whether "the clear language of the bribery statute [precluded an economic-coercion] . . . defense" or whether there was foundation for the defendant's theory. 846 F.2d at 534–35. The court resolved the dispute by deciding whether "instructions taken as a whole . . . place[d] the burden on the Government to prove lack of coercion." *Id.* at 534–36. To do this, the court "assume[d], arguendo, that the 'economic coercion' instruction' [was] 'supported by law' and that it ha[d] a foundation in the evidence." *Id.* at 535. Assuming that was the case, the court found that the instructions as stated by the judge "left the jury somewhat uncertain and, thus, arguably constite[d] error" (though the court found this error harmless). *Id.* at 535–36.

In *United States v. Alfisi*, 308 F.3d 144, 150 (2d Cir. 2002), a case cited by Defendants, the Second Circuit expressly declined to review the district court's instruction on economic coercion—a defense that the jury rejected—because it was not challenged on appeal.[6] *Id.* at 148. It did, however, reject the argument that *United States v. Barash*, 365 F.2d 395 (2d Cir. 1966), meant that "the term 'corruptly' requires evidence of an intent to procure a violation of the public official's duty." *Alfisi*, 308 F.3d at 150. The court went on to state in a footnote that, although economic coercion does not "negate[] a corrupt intent[,] . . . economic coercion is [generally] relevant to the culpability of the intent of a defendant charged with bribery." *Id.* at 150 n.1. But this was dicta in a footnote expounding on the difference between "bribery" and "paying unlawful gratuities." *Id.* at 150. Additionally, the case is not one decided in this Circuit, and the Court does not find it persuasive. Therefore, to the extent this dicta can be read to allow economic duress as part of a crime's intent calculus, the Court rejects it.

Despite the reluctance of courts to rule on this issue directly, *Lee* did evince disapproval of the idea that economic coercion can ever act as a defense to bribery. *Alfisi* and *Kay* both stopped short of actually holding that economic duress negates intent, though *Alfisi* noted that economic coercion could be generally relevant to the question of intent; i.e., it is something that the jury may consider in deciding whether the defendant committed the crime in question. Based

---

[6] Defendants concede that, in *United States v. Kay*, 513 F.3d 432 (5th Cir. 2007), the "Fifth Circuit[] . . . [did] not specifically [address] the economic coercion [jury] instruction." (Defs.' Resp. 10.) Nevertheless, they argue that the court did not disturb that portion of the instruction on appeal and, in fact, stated that the instruction allowed the jury to adequately consider whether the defendant lacked corrupt intent. (*Id.*) Again, however, the economic coercion portion of the instruction was not specifically challenged on appeal—so the court did not rule on the propriety of the instruction. 513 F.3d at 446–51.

on these cases, it seems that economic coercion is not an affirmative defense to bribery and cannot negate the intent element of bribery.

But there's still one more important case to discuss: *Dixon*, 548 U.S. at 5–17. In *Dixon*, the defendant was charged with, and convicted of, one count of receiving a firearm while under indictment and eight counts of making false statements in connection with the acquisition of a firearm. *Id.* at 3. The defendant asserted duress as a defense. *Id.* at 4. Relevantly, the Court held that "the duress defense . . . may excuse conduct that would otherwise be punishable, but the existence of duress normally does not controvert any of the elements of the offense itself." *Id.* at 6. Thus, "the defense of duress does not negate a defendant's criminal state of mind when the applicable offense requires a defendant to have acted knowingly or willfully." *Id.* at 7. In other words, duress *excuses*, but does not negate, the wrongful conduct (and state of mind). *Id.* at 6–7.

The Supreme Court did note, however, that "there may be crimes where the nature of the *mens rea* would require the Government to disprove the existence of duress beyond a reasonable doubt," citing, as an example, crimes requiring the mental state of "malice." *Id.* at 5 n.4. The Supreme Court also quoted Black's Law Dictionary, which defined "malice as '[t]he intent, *without justification or excuse*, to commit a wrongful act.'" *Id.* (quoting BLACK'S LAW DICTIONARY 968 (7th ed. 1999) (alteration in original) (emphasis added)). That caveat, of course, must follow from the Court's holding. "Malice" requires the crime to be committed without justification or excuse; therefore, the Government must prove beyond a reasonable doubt that there was no justification or excuse; i.e., any justification is transmogrified from an affirmative defense to an element of the crime. Because the Government must prove all elements of the crime, the Government has the burden of proving—where the crime requires the act be done

"maliciously"—that there was no justification or valid excuse. The Seventh Circuit has held that *Dixon* "is not limited to th[e] defense" of duress. *United States v. Jumah*, 493 F.3d 868, 873 n.2 (7th Cir. 2007).[7]

The issue in this case is whether, under *Dixon* and the cases just discussed, economic duress can negate the "corrupt" intent required for bribery. Here, the statute (18 U.S.C. § 201(b)(1)) requires the defendant to "corruptly give[], offer[], or promise anything of value to any public official" with "the intent to[] . . . influence such public official . . . to commit or aid in committing, or collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States." "Corruptly" can mean either the defendant intended to give something of value in return for an official act, *e.g.*, *United States v. Ganim*, 510 F.3d 134, 146–47 (2d Cir. 2007) (endorsing *Alfisi* in discussing the difference between bribery and paying unlawful gratuities); *Alfisi*, 308 F.3d at 149–50 (explaining that "[t]he 'corrupt intent' necessary to a bribery conviction is in the nature of a *quid pro quo* requirement; that is, there must be 'a specific intent to give . . . something of value *in exchange* for an official act" (quoting *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 404 (1999) (emphasis in original)), or intended to give something of value in return for an official act with knowledge of the acts and their illegality. *United States v. Tomblin*, 46 F.3d 1369, 1379–80 (5th Cir. 1995) (explaining that the trial court's jury instruction adequately stated both the *quid pro quo* requirement and the requirement that the defendant acted with an unlawful purpose); *see United States v. Hsieh Hui*

---

[7] In a concurring opinion, Justices Alito and Scalia understood the Court's holding to apply to duress under all criminal statutes. *Dixon*, 548 U.S. at 19 (Alito, J., and Scalia, J., concurring) (concurring with the "understanding that [the Court's opinion] does not hold that the allocation of the burden of persuasion on the defense of duress may vary from one federal criminal statute to another").

*Mei Chen*, 754 F.2d 817, 822 (9th Cir. 1985) (explaining that the evidence was sufficient to find a "corrupt intent" where a *quid pro quo* was present, where the defendant knew her acts were illegal, and where the defendant knew the acts of bribery had taken place); *United States v. Strand*, 574 F.2d 993, 996 (9th Cir. 1978); *see also United States v. Kelly*, 748 F.2d 691, 699 (D.C. Cir. 1984) (explaining, in the context of an entrapment defense, that the defendant held the requisite "corrupt" intent to commit bribery where the defendant knew of the *quid pro quo*, engaged in it intentionally, and was aware of its illegality).[8] Under either conception, "corruptly" does not include—like malice—an absence of excuse or justification. Likewise, the intent required for fraud—"a willful act by the defendant with the specific intent to deceive or cheat, usually for the purpose of getting financial gain for one's self or causing financial loss to another" (Defs.' Resp. 6 (quoting *United States v. Roberts*, 534 F.3d 560, 571 (7th Cir. 2008))—does not provide that absence of excuse or justification is a required element of the crime. Since the elements of bribery and fraud do not include malice (i.e., performance of the crime without excuse or justification), *Dixon* forecloses the possibility that economic coercion can negate any "intent" element (e.g., "corruptly" or "intent to") of the crimes charged.

Furthermore, *Dixon*'s holding pertained to the defense of physical duress, which the Supreme Court held could not act to negate the intent element of a crime. Thus, the holding

---

[8] In its discussion of the term "corruptly" under the Foreign Corrupt Practices Act, the court in *Kay* noted that the proposed jury instruction stated that "corruptly" meant "willfully" and "knowingly." 513 F.3d at 447. The *Kay* court explained that there are three levels of "willfulness." The first requires the defendant to know only that he committed the act in question. *Id.* Under the second level, the defendant must have known that his actions were in some way unlawful, though he need not know of the specific statute rendering them so. *Id.* at 447–48. The third level is reserved for only "complex" statutes (e.g., federal tax law), and it requires the defendant to know the terms of the statute as well as the fact the he was violating those terms. *Id.* at 448.

applies *a fortiori* here, where the defense in question is mere *economic* duress. It stands to reason that if physical duress is not enough to negate intent, economic duress cannot be enough, either.

Finally, as the Government noted in its brief: "every person who knuckles under to an extortionate demand does so intending to influence the extortionist not to carry out his threat, and that this should be enough to prove bribery." (Government's Mot. 5 (quoting *United States v. Holzer*, 840 F.2d 1343, 1351 (7th Cir. 1988)).) Defendants complain that the Government omitted the next sentence: "Yet there is some authority that one can be a victim of extortion but not be a bribe." (Defs.' Resp. 14 (quoting *Holzer*, 840 F.2d at 1351).) Ironically, though, Defendants seriously distort the meaning of *that* sentence by omitting the last part of it, which continues: "and that would surely be right in a case where the victim had paid the extortionist *at the point of a gun*, though the present case is far removed from this." *Holzer*, 840 F.2d at 1351 (emphasis added). That aligns with this Court's reading of the case law, which does not foreclose the opportunity to present the defense of duress.

Given the circuit courts' reluctance to allow economic coercion act as an affirmative defense or to negate the intent element of bribery, and given the Supreme Court's ruling in *Dixon*, the Court finds that economic coercion cannot be an affirmative defense to bribery or mail fraud, nor can it negate the intent of the party charged with either crime.

### III. Conclusion

For the foregoing reasons, the Court grants the Government's Motion (Dckt. 355.)

**ENTER ORDER:**

*/s/ Martin C. Ashman*

———————————————————
**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: April 5, 2010.