# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Petitioner, | ) | Case No. 08 CR 669 |
| | ) | |
| v. | ) | Judge David H. Coar |
| | ) | |
| **CHRISTOPHER WEST**, *et al.*, | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| Respondents. | ) | |

## MEMORANDUM OPINION AND ORDER

The Government of the United States of America ("the Government") indicted, among

others, John Ramin ("John"), Tahir Ramin ("Tahir"), and AZ Corporation ("AZ Corp.")

(collectively "Defendants") on various charges of conspiracy to commit bribery under 18 U.S.C.

§ 371, conspiracy to commit mail fraud under 18 U.S.C. § 1349, and bribery of public officials

under 18 U.S.C. § 201(b)(1)(A)–(C). Currently, there are three motions before this Court: (1) the

Government's Motion To Exclude Evidence and Argument Relating to the "Warlord Defense"

and U.S. Military Operations ("Government's Warlord Motion") (Dckt. 356); (2) the

Government's Motion in Limine to Preclude Evidence and Argument Aimed at Jury Nullification

("Government's Nullification Motion") (Dckt. 354); and (3) Defendants' Motion to Compel

Disclosure of AZ Corp.'s Statements Pursuant to Fed. R. Crim. P. 16(a)(1)(C) ("Defendants'

Motion") (Dckt. 445). This Court rules on these motions under Judge David H. Coar's referral

pursuant to N.D. Ill. R. 72.1. For the reasons stated below, the Court grants in part the

Government's Warlord Motion (Dckt. 356); denies the Government's Nullification Motion

(Dckt. 354); and denies Defendants' Motion (Dckt. 445).

# I.  **Background**

John and Tahir—owners of AZ Corp., a contracting business—were contractors in Afghanistan against whom the Government has alleged bribery, conspiracy, and mail fraud. (Superceding Indictment ¶¶ 4, 8, 27, 70, 107, 110.) Among the others charged in the superceding indictment was Christopher West ("West"), an Army Major with the Illinois National Guard 33d Area Support Group, who was deployed at Bagram Airfield ("Bagram") in Afghanistan.[1] (*Id.* at ¶ 1.) At Bagram, West had various duties, including acquiring bunkers and barriers for use on the airfield. (*Id.* at ¶ 2.) AZ Corp. supplied bunkers and barriers to Bagram. (*Id.* at ¶ 4.)

As to the charges against Tahir, John, and AZ Corp., the Government indicted them based on acts occurring in two different time periods. According to the superceding indictment, the first occurred between September and November of 2004, when John and Tahir allegedly paid $30,000.00 to West (and others) in return for the award of a bunkers and barriers contract. (*Id.* at ¶ 27.) The second act or series of acts took place between July 2004 and January 2005. (*Id.* at ¶ 30.) The Government alleges that, during this time, Tahir and John fraudulently inflated the number of bunkers and barriers AZ Corp. delivered to Bagram, resulting in overpayments from which John and Tahir profited. (*Id.*) The charges of mail fraud and conspiracy to commit bribery involve facts relating to these incidents. (*See id.* at ¶¶ 8–25, 70–106, 110–19.)

To facilitate the arrest of Defendants and several material witnesses, the Government induced them to the United States, inviting them to be honored by the Department of Defense for their work at Bagram as United States contractors. (Defs.' Resp. to Government's Nullification Mot. 1.) The Government offered these individuals free airfare, lodging, and meals for their trip.

---

[1] West has since pled guilty to certain crimes.

(*Id.* at 2.) Six of the seven individuals accepted the invitations. (*Id.*) They then traveled for thirty-six hours to the United States, landing in Chicago on August 25, 2008. (*Id.*)

The Government interviewed each upon their arrival. (*Id.*) The Government also arrested Tahir Ramin, Noor Alam, and Abdul Bakshi (based on sealed indictments), and Bashir Ahmad, Kiomars Rafi, and Ziaulhaq (based on material arrest warrants). (*Id.*) Three of the four material witnesses (Bashir Ahmad, Kiomars Rafi, Ziaulhaq) were held without bail but eventually released from custody and placed under house arrest on electronic monitoring. (*Id.*) On or about October 21–22, 27, 2009, the Government deposed the witnesses. (*Id.*) The Court discharged the witnesses on November 24, 2009, permitting them to return to Afghanistan. (*Id.*)

As the case progressed, several motions were decided and the parties exchanged numerous documents. The district judge denied Defendants' motion to suppress Tahir's interview statements. (Dckt. 490.) The district judge also ordered witnesses disclosures be filed fourteen days prior to trial. (Dckt. 341.) Additionally, the Government turned over all of the statements it may use at the trial of the case. (Government's Resp. to Defs.' Mot. 1.)

## II. **Government's Motions**

### A. **Motion to Exclude Nullification Evidence**

The Government seeks to exclude "evidence and argument relating to the detention, arrest, or travel to the United States of the individual defendants and the travel to the United States of the material witnesses." (Government's Nullification Mot. 3.) It claims that such evidence is aimed at jury nullification and "has no bearing on the elements the [G]overnment must prove to establish the offenses charged." (*Id.*) Defendants respond that this evidence is

relevant to the witnesses' biases and motives. (Defs.' Resp. to Government's Nullification Mot. 2–3.) They also argue that, if the Government introduces Tahir's confession, they should, for the purposes of voluntariness, be able to inquire into the circumstances of his travel to the United States and subsequent arrest. (*Id.* at 5.) Finally, Defendants argue the motion is premature. (*Id.*)

Jury nullification occurs when the jury chooses to reject evidence or ignore law, thereby excusing a defendant's conduct based on the jury's sense of justice, or sense of fairness about a policy issue regarding a defendant's trial. BLACK'S LAW DICTIONARY 936 (9th ed. 2009). The Seventh Circuit has described this phenomenon as "an 'aberration under our system.'" *United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) (quoting *United States v. Anderson*, 716 F.2d 446, 450 (7th Cir. 1983)). This means that a defendant may not suggest the jury should acquit her if the government has met its burden of proof. *United States v. Warner*, 396 F. Supp. 2d 924, 936 (N.D. Ill. 2005) (citing *United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996)).

But the failure of evidence to relate precisely to an element of a crime doesn't mean it should be excluded *per se*. Indeed, the Federal Rules of Evidence expressly provide for the introduction of evidence to impeach the witness. *E.g.*, FED. R. EVID. 607 ("The credibility of a witness may be attacked by any party, including the party calling the witness."); FED. R. EVID. 608 ("The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise."); FED. R. EVID. 611(b) ("Cross-examination should be limited to the

subject matter of the direct examination and matters affecting the credibility of the witness."). When it comes to accusing witnesses, the right of cross-examination is grounded in the Sixth Amendment to the United States Constitution, which guarantees the right of the accused "to be confronted with the witnesses against him." U.S. CONST. amend VI. The Supreme Court has confirmed—as has the Seventh Circuit—that motivation and bias are proper subjects for cross-examination. *Davis v. Alaska*, 415 U.S. 308, 316 (1974); *United States v. Recendiz*, 557 F.3d 511, 530 (7th Cir. 2009). Thus, although the scope of cross-examination is not unlimited, "'the jury [must] ha[ve] sufficient information to make a discriminating appraisal of the witness's motives and biases.'" *Recendiz*, 557 F.3d at 530–31 (quoting *United States v. De Gudino*, 722 F.2d 1351, 1355 (7th Cir. 1983)).

The circumstances surrounding the "detention, arrest, or travel to the United States of the individual defendants and the travel to the United States of the material witnesses" are relevant even if such circumstances don't go directly to an element of any of the crimes charged. Defendants rightly point out that the time the material witnesses spent in custody could have influenced their desire to make a statement in favor of the Government (or perhaps in favor of Defendants, as the Government points out). Also relevant are the conditions under which they were kept and the unusual circumstances under which they were taken into custody. In what direction these facts shifted the witnesses' credibility (in favor of the Government or against it), if at all, is a question for the jury. To determine the witness' credibility, then, the jury must be able to consider these predicate facts, which may give rise to bias or motivation to testify.

The same goes for evidence of the circumstances surrounding Tahir's trip to the United States. At oral argument, the Government and Defendants agreed that the circumstances

surrounding Tahir's arrival in the United States were relevant to the issue of the voluntariness of his confession. Because the parties agree on this, Defendants may introduce, for purposes of voluntariness, evidence related to the circumstances surrounding Tahir's travel to the United States. This Order does not purport to allow Defendants to argue to the jury that it may reject such evidence, or any law or Court instruction, based on the jury's own sense of justice or fairness.

### B.      Motion to Exclude "Warlord Defense"

The Government also has moved to exclude a so-called "warlord defense." (Government's Warlord Mot. 1.) The Government seeks to preclude Defendants from introducing evidence of "[i]nformation relating to supposed payments by the U.S. Military to Afghan warlords, and other aspects of U.S. military operations." (*Id.*) More specifically, the Government claims Defendants will use this evidence to show that "[D]efendants' actions were justified because they mimicked alleged payments by the U.S. military to Afghan warlords who enacted unlawful 'tolls' for safe passage." (*Id.* at 2.) The Government claims that this amounts to an unrecognized defense of equitable estoppel, and that the defense cannot void Defendants' intent. (*Id.* at 5–7.)

Defendants contest the characterization of such a defense as "equitable estoppel." They argue that such evidence is relevant and possibly exculpatory. (Defs.' Resp. to Government's Warlord Mot. 16–17). As to relevance, Defendants claim that "in the numerous instances where warlords or the Taliban destroyed AZ [Corp.] trucks, some of the supposedly undelivered product may have been destroyed." (*Id.* at 17.) They also claim that the warlords threatened

physical violence at the military's behest in furtherance of the bunkers-and-barriers scheme. (*Id.* at 16.)

In the first place, the Court finds that the warlord defense does not resemble estoppel. The argument is one of duress, the elements of which are "(1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) no reasonable opportunity to avoid the threatened harm." *United States v. Toney*, 27 F.3d 1245, 1248 (7th Cir. 1994).

The application of this defense to the specific facts, though, presents a different issue: whether the threats and actions of the warlords are relevant to the affirmative defense of duress. The answer is "it depends." Duress comes into play only if Defendants can link the violence to the military (which Defendants claim they can do). That is, the military must have exerted the force Defendants claim forms the basis for their duress defense. The fact that *warlords* threatened Defendants with violence is, by itself, irrelevant to the issue of whether *the military* subjected Defendants to violence or threats of violence as part of the bunkers-and-barriers scheme. Such evidence is relevant only if Defendants can show that the military orchestrated or in some way used or conspired with the warlords to carry out threats or violence on its behalf. At oral argument, both parties agreed that this analysis applied, and the Court so holds.

Additionally, the relevance of the warlord attacks on AZ Corp. that destroyed bunkers or barriers depends upon when AZ Corp. was paid. If Defendants were paid for all *complete* deliveries (i.e., after the purported deliveries were made), then these attacks are irrelevant. If, however, Defendants can show that wasn't the case (i.e., they were paid *in full* prior to the completed delivery), then attacks by warlords on AZ Corp. would be relevant. Under the latter

scenario, the payments would not reflect the number of bunkers AZ Corp. in fact delivered; thus, warlord attacks that destroyed bunkers and barriers may explain why some were not delivered.

For these reasons, the Government's Warlord Motion must be denied insofar as it seeks to prevent Defendants from introducing a defense of duress based on force or violence that the military exerted using the warlords as agents or conduits. The Court also denies the Warlord Motion insofar as it seeks to prevent Defendants from introducing evidence of warlords attacks on AZ Corp. only if AZ Corp. was pre-paid in full for the bunkers and barriers delivered to Bagram. Thus, Defendants are not precluded from asserting the defense of duress generally, and may assert the defense as to the warlords if they can show the military directed or orchestrated the warlords' attacks or threats upon Defendants. Additionally, Defendants may introduce evidence of warlord attacks on AZ Corp. trucks or convoys carrying bunkers if Defendants can show that they were pre-paid in full for their deliveries.

### III. __Defendants' Motion to Compel__

Defendants brought a motion under Federal Rule of Criminal Procedure 16 ("Rule 16") to compel the Government to specifically disclose "any statement made by any individual that the Government contends was legally able to bind AZ Corp.," and to identify the statements upon which it will rely at trial. (Defs.' Mot. 1.) The Government responds that it already provided the necessary information, and that Rule 16(a)(1)(C) does not require it to specifically identify the statements upon which it will rely. (Government's Resp. to Defs.' Mot. 1.)

Rule 16(a)(1)(C) requires the government to disclose to an organizational defendant,

> [u]pon a defendant's request, . . . any statement described in Rule 16(a)(1)(A) and (B) if the government contends that the person making the statement:
>
> (I) was legally able to bind the defendant regarding the subject of the statement because of that person's position as the defendant's director, officer, employee, or agent; or
>
> (ii) was personally involved in the alleged conduct constituting the offense and was legally able to bind the defendant regarding that conduct because of that person's position as the defendant's director, officer, employee, or agent.

Defendants interpret this statute to allow them to force, at this moment, the Government to specifically disclose what statements they will contend at trial bind AZ Corp. But it does no such thing. The strictures of this rule aren't imposed unless "the government *contends* that the person making the statement" can bind a defendant or was personally involved in the illegal conduct. *Id.* (emphasis added); *United States v. W.R. Grace*, 401 F. Supp. 2d 1087, 1092 (D. Mont. 2005) ("Whether a statement must be produced under . . . [R]ule [16(a)(1)(C)] depends on the government's position regarding the person making the statement."). Nowhere does Rule 16 state that a defendant may force the government to specifically identify each statement it contends binds the organizational defendant; it just compels, upon a defendant's request, *production* of the statement(s) *once the government contends* the person making the statement "was legally able to bind" the corporation. FED. R. CRIM. P. 16(a)(1)(C)(i)–(ii). None of the case law Defendants cite contradicts this position. (Defs.' Mot. 3 (citing *United States v. Chalmers*, 410 F. Supp. 2d 278, 291 (S.D.N.Y. 2006); *United States v. Lin Lyn Trading, Ltd.*, 911 F. Supp. 494, 497 (D. Utah

1996); *United States v. Jaques Dessange, Inc.*, No. 99-1182, 2000 WL 257155, at *3 (S.D.N.Y. Mar. 7, 2000)).

Nevertheless, Defendants seek to force the Government to identify which statements the Government contends bind AZ Corp. The law does not support this request. The Government has not yet determined the specific status of such statements, and Defendants cannot force them to do so under Rule 16. Additionally, the district judge already held that witness lists must be filed fourteen days before trial. Furthermore, the Government has pledged to file its *Santiago* proffer[2] twenty-one days before trial. (Government's Resp. to Defs.' Mot. 2 n.2.) The Government also has given all the statements it may rely on under Rule 16 to Defendants, and has affirmed that it will produce any further statements that they may intend to rely on at trial. There is nothing more to do at this time. If, however, the Government fails to produce a statement at trial that they have not previously disclosed under Rule 16 (by the dates set by the district judge), the Court may exclude the evidence as a sanction for failing to comply with Rule 16. *See W.R. Grace*, 401 F. Supp. 2d at 1091 ("If the government attempts at trial to use a past or present employee's statement or conduct to bind [the defendant corporation], but has not produced discoverable rough notes of any interview of that employee, the government's evidence may be excluded as a sanction for failure to comply with Rule 16.").

---

[2] A *Santiago* proffer occurs when the government wants to introduce a statement of a co-conspirator that otherwise would be considered hearsay (if made by someone who was not a co-conspirator). *United States v. Alviar*, 573 F.3d 526, 540 (7th Cir. 2009). To do this, the government must proffer the statement to the district court, which then determines the statement's admissibility. *Id.*

## IV.  Conclusion

For the foregoing reasons, the Court grants in part the Government's Motion To Exclude

Evidence and Argument Relating to the "Warlord Defense" and U.S. Military Operations

(Dckt. 356), denies the Government's Motion in Limine to Preclude Evidence and Argument

Aimed at Jury Nullification (Dckt. 354), and denies Defendants' Motion to Compel Disclosure of

AZ Corp.'s Statements Pursuant to Fed. R. Crim. P. 16(a)(1)(C) (Dckt. 450).

<strong>ENTER ORDER:</strong>

<strong>MARTIN C. ASHMAN</strong><br>United States Magistrate Judge

Dated: June 2, 2010.