IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. 08 CR 669 |
| ) | |
| v. ) | Judge David H. Coar |
| ) | |
| CHRISTOPHER WEST, *et al.*, ) | Magistrate Judge |
| ) | Martin C. Ashman |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court is the Joint Motion to Expand Conditions of Release ("Release Motion") (Dckt. 536) filed by Defendants Tahir Ramin and John Ramin ("the Ramins"), Noor Alam ("Alam"), and Abdul Quodos Bakhshi ("Bakhshi") (collectively, "the Defendants"). Also before the Court is the Ramins' Motion to Compel. (Dckt. 587). The Defendants have been indicted on various charges of conspiracy to commit bribery under 18 U.S.C. § 371, conspiracy to commit mail fraud under 18 U.S.C. § 1349, and the bribery of public officials under 18 U.S.C. § 201 related to acts allegedly undertaken at Bagram Air Force Base ("BAF") in Afghanistan. The Defendants seek modifications to the terms of their release in order to travel to Afghanistan to attend depositions pursuant to Fed. R. Crim. P. 15(c)(2).[1] The Ramins also ask the Court to compel the United States of America ("the Government") to attend the depositions of four

---

[1] The release agreements currently in effect prohibit the Defendants from attending the depositions because the Ramins (who have dual United States and Afghanistan citizenship), and Alam and Bakhshi (who are both citizens of Afghanistan) were required to surrender their passports, to agree not to obtain any travel documents, and to wear electronic monitoring devices as conditions of their release. (Resp. 2).

witnesses in Kabul, Afghanistan. For the reasons stated below, the Release Motion is denied and the Motion to Compel is granted in part.

## I. Joint Motion to Expand Conditions of Release

Federal Rule of Criminal Procedure 15(c)(2) provides that a defendant not in custody "has the right upon request to be present at [a] deposition, subject to any conditions imposed by the court." Fed. R. Crim. P. 15(c)(2). Ordinarily, a criminal defendant has a constitutional right to be present at the deposition of adverse witnesses before such out-of-court testimony can be admitted at trial. The Sixth Amendment's Confrontation Clause provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause's "central concern . . . is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). To accomplish this end, the Confrontation Clause affords a criminal defendant the right to cross-examine an adverse witness face-to-face. *See Coy v. Iowa*, 487 U.S. 1012, 1017 (1988).

The Defendants argue that the Confrontation Clause requires the Court to allow them to travel to Afghanistan pursuant to Rule 15(c)(2) to attend the depositions in person. As the Government notes, however, the deponents in this case were noticed for deposition by the Ramins, not by the Government. While Fed. R. Crim. P. 15(c)(1)-(2) does not distinguish between a witness for the prosecution or the defense, a defendant's confrontation rights extend to witnesses adverse to him; a defendant cannot ordinarily invoke the Sixth Amendment for the

- 2 -

right to confront non-adverse witnesses. *See United States v. Kindig*, 854 F.2d 703, 709 (5th Cir. 1988); *see also Mitchell v. Hoke*, 745 F. Supp. 874, 878 (E.D.N.Y. 1990) ("It is the right to *cross* examination, as distinct from direct examination, that is protected by the confrontation clause."). The witnesses at issue here are presumably not adverse to the Ramins because the Court allowed the depositions only after determining that the witnesses' proposed testimony would be exculpatory to them. The Court expresses no opinion as to whether the testimony will be exculpatory to Alam and Bakhshi, who did not seek leave to depose the witnesses. (Dckt. 352). Nevertheless, the Court recognizes that a witness's testimony may not always be predictable. It is possible that the deposition witnesses – all of whom have refused to appear at trial – may give testimony that implicates the Defendants' confrontation rights.[2]

Notwithstanding that possibility, neither Fed. R. Crim. P. 15 nor the Confrontation Clause necessarily requires the Defendants to be present in Afghanistan for the depositions. Rule 15 is designed to preserve testimony "[w]henever due to exceptional circumstances of the case it is in the interest of justice" to do so, Fed. R. Crim. P. 15(a), and it allows depositions to be taken outside a defendant's presence if the facts of a case so justify. *See United States v. Salim*, 855 F.2d 944, 949-50 (2d Cir. 1988) ("We do not believe that the purpose of the rule should be subverted by allowing the presence requirement . . . to become an obstacle that prevents the deposition from being taken at all."). Similarly, the Confrontation Clause also permits an

---

[2] The parties have not addressed the question of whether a Confrontation Clause issue properly relates to the taking of the depositions or whether constitutional concerns will arise only if adverse testimony is proffered against the Defendants at trial. Some courts have held that only the admissibility of deposition testimony, not the taking of the deposition itself, involves Confrontation Clause issues. *See United States v. Drogoul*, 1 F.3d 1546, 1554 (11th Cir. 1993) ("Only when deposition testimony is sought to be introduced in evidence are the defendants' confrontation rights truly implicated.").

exception to a defendant's Sixth Amendment right to be present "where denial of such confrontation is necessary to further an important public policy and . . . the reliability of the testimony is otherwise assured." *Craig*, 497 U.S. at 850.

The Defendants argue that no policy in this case is compelling enough to justify applying *Craig*'s exemption to their confrontation rights. Citing *United States v. Abu Ali*, 528 F.3d 210 (4th Cir. 2008), the Defendants point out that the Government cannot rely on a general interest in enforcing the criminal laws to override such rights. *See Abu Ali*, 528 F.3d at 241 ("*Craig* plainly requires a public interest more substantial than convicting someone of a criminal offense."). This argument is correct as a general principle. The *Abu Ali* court found that the Government's interest in preventing terrorism was sufficient to keep a defendant charged with planning terrorist attacks from traveling to Saudi Arabia to attend depositions there; United States officials could not maintain effective custody of the defendant abroad or guarantee his return to this country to stand for trial. *See id.* at 239, 241-42. Contrasting the instant case to *Abu Ali*, the Defendants argue that the Government's interest in preventing them from traveling to Afghanistan falls far below a threat like terrorism and is insufficient to deny them their Confrontation Clause rights.

This argument overlooks that applying terrorism as a standard sets an exceptionally high threshold for an exception under *Craig*, one that would deny courts the flexibility to balance the issues presented by specific cases. The Fourth Circuit made clear in *Abu Ali* that it was not announcing a blanket rule that should be applied irrespective of a case's facts. *See id.* at 243 ("There was no clear roadmap here, and *Craig* anticipates that a reasonable balance must be struck."). Courts have found exceptions under *Craig* on grounds less compelling than engaging in direct acts of terrorism. *See, e.g., United States v. McKeeve*, 131 F.3d 1, 9-10 (1st Cir. 1997)

(finding an exception for a defendant charged with conspiring to export computers to Libya). Indeed, some courts have failed to articulate any public policy at all when allowing foreign depositions to take place outside the defendant's presence. *See United States v. Medjuck*, 156 F.3d 916, 920-21 (9th Cir. 1998).

While this case does not involve terrorism allegations, the Defendants have been charged with various bribery and conspiracy counts related to, among other things, the award of contracts for delivering bunkers and barriers at BAF in Afghanistan. The Superceding Indictment states that these structures were used to form perimeters offering protection at BAF. (Dckt. 201 ¶ 2). The Government added at oral argument that the Defendants were involved in an effort to "short" military bases of these "consummate . . . protection" items, thereby potentially creating security risks to American military and civilian personnel. (Tr. 17). Courts have long recognized that national security is one of the government's strongest interests. *See Haig v. Agee*, 453 U.S. 280, 307 (1981) ("It is obvious and unarguable that no governmental interest is more compelling than the security of the Nation.") (internal quotation and citation omitted). The Defendants have not shown how the Government's interest in securing a military base in a war zone fails to meet this standard. *Cf. United States v. Acevedo-Delgado*, 167 F. Supp. 2d 477, 481 (D. Puerto Rico 2001) (finding a compelling governmental interest in protecting the security of a naval installation). Accordingly, the Court finds that the allegations raised in the Superceding Indictment are sufficient to meet *Craig*'s public policy exception.

Without more, however, the Government's policy interest is not sufficient to deny the Defendants' Release Motion; *Craig* also requires that the deposition testimony in question be reliable. *See Craig*, 497 U.S. at 850. The Defendants argue that if they are not physically present

at the depositions, the use of translators – who are needed here for the witnesses and for at least two of the Defendants who do not speak English – will be too cumbersome to allow reliable testimony. (Tr. 6). Translators, however, have been permitted in other cases allowing foreign depositions to be taken outside the defendant's presence. In *Abu Ali*, for example, a translator was used to depose witnesses in Saudi Arabia while the defendant attended via a two-way video link in the United States. *See Abu Ali*, 528 F.3d at 239-40.

Even a more intricate means of translating questions than the process proposed in this case has not violated a defendant's confrontation rights. In *United States v. Salim, supra*, the Government submitted written questions to a French magistrate in English and French, and defense counsel submitted cross-examination questions in English. The magistrate posed these questions in French to a Farsi-speaking witness; the magistrate's questions were then translated into Farsi; and the witness's responses were re-translated from Farsi into French, then into English, and were recorded by the court reporter. Only after the witness left the room was the court reporter allowed to read an English translation of the witness's testimony to the attorneys. *Salim*, 855 F.2d at 947-48. The translation process in the instant case will undoubtedly create some delay, but the Defendants have not shown how it will be more burdensome than the process in *Salim*, or how it will make the witnesses' testimony inherently unreliable. Moreover, translators would still be required for the non English-speaking Defendants and witnesses even if the Defendants were in Afghanistan.[3]

---

[3] Other factors associated with reliability are present in this case. The United States Embassy in Kabul can authorize a consular officer to administer an oath at the deposition, (Dckt. 523), and the Afghan Supreme Court has granted permission for the witnesses to be sworn in pursuant to United States law. (Reply Ex. 1). Oaths administered by consular officers are
(continued...)

The Defendants further argue that the Government is required to make a diligent effort to secure their presence in Kabul before the Court can deny their Release Motion. Federal Rule of Criminal Procedure 15(c)(1) states that "[t]he officer who has custody of the defendant must produce the defendant at the deposition and keep the defendant in the witness's presence during the examination" unless the defendant waives his confrontation right or is disruptive. Fed. R. Civ. P. 15(c)(1). *See also Christian v. Rhode*, 41 F.3d 461, 467 (9th Cir. 1994) ("It is . . . clear that the state must do *something* in its attempt to secure the defendant's presence."); *Medjuck*, 156 F.3d at 920; *McKeeve*, 131 F.3d at 8. The Government's efforts need not be "heroic"; a good-faith attempt to make the defendant available will suffice. *McKeeve*, 131 F.3d at 8.

The travel requirement in Rule 15(c)(1) specifically applies to defendants already in custody. Assuming that it also applies to defendants not in custody, the Defendants have not shown why the Government must produce them in Afghanistan under the present facts. The Government's burden can be satisfied "by virtue of its demonstration of the impossibility of obtaining [a defendant's] physical presence on terms acceptable to the Government." *Medjuck*, 156 F.3d at 920 (finding no harm when the Government lacked a means of turning over a defendant to Canadian authorities and securing his return for trial). The Government claims that is the case here because Alam and Bakhshi have no ties to the United States; the Ramins own

---

³(...continued)
taken under penalty of perjury. 22 U.S.C. § 4221. The Court notes that the enforceability of such oaths is uncertain, as the United States and Afghanistan do not have an international agreement to enforce penalties in that country for violations of the United States' perjury laws. (Dckt. 523). The Defendants' Reply Brief, however, does not address the reliability issue on this ground.

multiple offshore bank accounts and have powerful connections with the Afghan authorities; and John Ramin has a permit to reside in the United Arab Emirates. (Resp. 1-2). Taken together, the Government contends, these factors indicate that the Defendants pose a serious flight risk if they are allowed to travel to Afghanistan without being placed in detention – a possibility the Defendants declined to accept at oral argument. (Tr. 9).

The Court agrees that the risk of flight is serious in this case, especially as the Defendants would be released into a war zone in which control over them would be especially challenging. Even if they were placed in custody, moreover, the Defendants would have to be turned over to the Afghan authorities because the United States Marshal's Service would be unable to keep them in custody in Afghanistan. (*Id.*). The United States and Afghanistan do not have an extradition treaty, and the Government would be unable to compel the Defendants to return to this country. The Afghan government would have no authority of its own to turn the Defendants over to the United States. The Defendants would then be able to live openly in Afghanistan or in any other country that has no extradition treaty with the United States.

Finally, the Defendants contend that ample case authority suggests that their participation by video or telephone will not satisfy the Confrontation Clause. Courts have found no constitutional violation, however, when a defendant participates in a deposition through a video link, *Medjuck*, 156 F.3d at 920, or even without the use of video. *See McKeeve*, 131 F.3d at 7. Moreover, the Defendants' reliance on *United States v. Thompson*, 599 F.3d 595 (7th Cir. 2010) to support their position is misplaced because that case did not address any Sixth Amendment issue. In *Thompson*, the Seventh Circuit held that a hearing under Fed. R. Crim. P. 32.1(b)(2) to revoke a defendant's supervised release could not be held by video conference because

Rule 32.1(b)(2) gives a defendant the "opportunity to appear" before the court. *Thompson*, 599 F.3d at 600. Such an appearance requires the physical presence of both the defendant and the presiding judge, in part, because "'appear' has generally been understood to require the defendant to come personally before a judicial officer" when his liberty is at stake. *Id.* It is well established, however, that the Confrontation Clause does not apply to such revocation hearings. *See, e.g., United States v. Rondeau*, 430 F.3d 44, 47-48 (1st Cir. 2005); *United States v. Hall*, 419 F.3d 980, 985 (9th Cir. 2005). A revocation hearing is not part of a criminal prosecution and, as a result, does not involve a full range of constitutional protections. *Thompson*, 599 F.3d at 598; *Rondeau*, 430 F.3d at 47-48.[4]

In light of the Government's inability to exert meaningful control over the Defendants in Afghanistan, the Court finds that the terms of the Defendants' release agreements should not be modified. The Defendants will be able to participate in the depositions under conditions that this Court, along with other courts, finds satisfies the Confrontation Clause. Their attorneys will attend the Kabul depositions, and the Defendants may participate in them by means of video conference facilities. They may have additional counsel present with them in this country and have private telephone lines to their attorneys in Kabul to pose questions and comments concerning the witnesses' testimony. Translators fluent in the languages used at the depositions

---

[4] The Defendants briefly argue in their Reply that their Fifth and Fourteenth Amendment Due Process rights also require them to be present in Afghanistan for the deposition. "Under the [Fourteenth Amendment] due process clause, a defendant has the right to be present at any criminal proceeding in which his presence would contribute to the proceeding's fairness or reliability."). *Christian*, 41 F.3d at 465 n.2 (internal quotation and citation omitted). As noted above, however, the Defendants have not shown why the depositions would be unreliable if they participated by video conference.

will also be available to the Defendants. The Joint Motion to Expand Release Conditions is denied.

## II. Motion to Compel

The Ramins also ask the Court to set a specific date and location for their four witness depositions. Arguing that the Government has unduly delayed this matter, the Ramins proposed in oral argument that the depositions should occur on September 13, 2010 and asked that they be taken either at the Intercontinental Hotel or at the offices of Defendant AZ Corporation ("AZ"), both located in Kabul.

The depositions in this case must take place pursuant to a June 22, 2010 letter from the Department of State to the District Court. (Dckt. 523). The letter requires the parties to identify to the State Department all the witnesses involved and to propose specific dates for the depositions. (*Id.*). It also requires federal prosecutors to obtain advance permission from the Embassy in Kabul before traveling to Afghanistan. (*Id.*). The Court believes that the logistical and safety concerns involved in these depositions require all the Afghan depositions to be taken on or around the same date. This means, however, that the parties cannot comply with the State Department's requirements at this time because it is not clear who the Defendants will ultimately depose. Defendant Alam has moved to depose four additional witnesses, (Dckt. 574), but the Court is unable to rule on the motion until Alam provides affidavits showing that the witnesses will be unavailable for trial and that the witnesses' testimony will be material. In addition, Defendant Bakhshi indicated on August 4, 2010 that he intended to move to depose his own

Afghan witnesses. For these reasons, the Court is unable to set a specific deposition date at this time.

The depositions' location presents a more immediate issue. The Government states that it will not appear at AZ's offices because the building lacks an outer safety perimeter or other safeguards against attacks. The Intercontinental Hotel is also unacceptable to the Government. The Government participated in depositions in December, 2009 at Kabul's Heetal Hotel, but one week earlier a suicide bomber killed eight people outside the hotel. (Resp. Ex. 2). Although the Government went forward with the depositions as scheduled, it now deems that decision to have been a mistake that it will not repeat. In response, the Ramins argue that their entire case depends on deposing their witnesses, all of whom refuse to appear at the Embassy or any other United States office out of fear of being labeled as spies. The Ramin witnesses are also aware that the Government detained other witnesses in the United States after luring them here by way of a "sting" operation; the Ramin witnesses are said to be distrustful of the Government and will not appear for deposition at any location controlled by the United States.

These facts do not permit an easy decision by the Court. On the one hand, the Government has legitimate concerns about the safety of the prosecutors and others who will attend. Indeed, the State Department's letter makes clear that the threat to all United States citizens traveling in Afghanistan is "critical," (Dckt. 523), and the Heetal Hotel attack shows this is not an idle concern. The Government, however, should have foreseen that travel to Afghanistan might be required when it chose to indict several Afghan nationals. On the other hand, the Court recognizes that the Ramins' failure to produce their witnesses for deposition could affect their ability to defend themselves at trial. The Ramins only have the force of

persuasion to urge their witnesses to appear for deposition, as the Court has no subpoena power to compel them to do so. *See Pasco Intern. (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 504 n.18 (7th Cir. 1980); *United States v. Groos*, 616 F. Supp. 2d 777, 791 (N.D. Ill. 2008).

Despite the Ramins' concerns, the security issues in this case are serious and require special emphasis on "whether the safety of United States officials would be compromised by going to the foreign location." *United States v. Olafson*, 213 F.3d 435, 442, (9th Cir. 2000); *see also United States v. Jefferson*, 594 F. Supp. 2d 655, 672 (E.D. Va. 2009) ("[C]ourts should not order Rule 15 depositions that place prosecutors, counsel, or others in jeopardy of being killed, injured, or kidnaped."). The Court, therefore, finds that the security threats in this case require a location other than AZ's offices or the Intercontinental Hotel, both of which lack the necessary safety precautions. In light of the witnesses' refusal to appear at the Embassy, that location is also an undesirable venue.

The Court finds that the depositions should take place at the International Security Assistance Forces ("ISAF") compound in Kabul. The ISAF facility, which is controlled by NATO, is a non-governmental location that will allow video and phone links to a Chicago-based facility with a "VTC" system compatible with the one operated by the ISAF. The Defendants' counsel represented to the Court that phone lines to Kabul are especially unreliable. (Tr. 22). The ISAF location will allow the Defendants to participate by video conference from Chicago in as reliable a manner as possible under the circumstances. The Government states that the Chicago office of the Federal Bureau of Investigation has such a VTC system, and the Defendants and their Chicago-based counsel will be able to attend from there or some other VTC facility to be arranged by the Government.

The Ramins contend that the witnesses will not attend at the ISAF compound because they will not perceive it as a neutral facility. Neither Fed. R. Crim. P. 15 nor the Federal Rules of Civil Procedure guarantees a location free of all unwelcome associations, and determining the neutrality of foreign locations – especially in a war zone – is not always feasible. The Ramins have not shown how a Kabul hotel popular with foreigners will shield their witnesses, who may be testifying as to activities of Afghan warlords and private armies, from the attention they fear. The Ramins themselves identify the witnesses as "unsophisticated Afghan laborers" who, presumably, would garner some unwanted scrutiny as part of the many attorneys, videographers, translators, court reporters, and security personnel who would be present at the Intercontinental Hotel.

The Court understands the Defendants' potential problems in persuading the witnesses to attend what they might reasonably believe is a location dominated by the United States. However, the Defendants are also being tried in a United States court under domestic laws. Without subpoena powers to compel the witnesses' attendance, the Court can only balance the Ramins' and the Government's interests as it would in any other case. Because of the severe conditions in a war zone, the balance weighs in favor of a location not under direct United States control but which has adequate security to protect all the participants. Accordingly, the Government and the Defendants' counsel will attend the scheduled depositions at the ISAF compound on dates satisfactory to the parties and the United States Embassy in Kabul, as outlined in the State Department's letter to the District Court.

### III. Conclusion

For the aforementioned reasons, the Defendants' Joint Motion to Expand Conditions of Release (Dckt. 536) is denied, and the Motion to Compel (Dckt. 587) is granted in part.

**ENTER ORDER:**

Dated: August 18, 2010.

**MARTIN C. ASHMAN**
United States Magistrate Judge