IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 08-CR-669 |
| | ) | Judge Matthew F. Kennelly |
| | ) | |
| CHRISTOPHER WEST, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY OF THE UNITED STATES IN SUPPORT OF ITS MOTION TO
PRECLUDE EVIDENCE AND ARGUMENT RELATED TO A DURESS DEFENSE**

The United States hereby respectfully submits this Reply In Support of its Motion To Preclude Evidence and Argument Related to a Duress Defense (Doc. 705) (filed Nov. 30, 2010). In their Response, defendants concede that they were not continuously under an immediate threat of death or bodily injury during the pendency of the criminal conspiracy. Accordingly, their affirmative defense of duress fails as a matter of law. Likewise, defendants acknowledge that they did not exhaust all reasonable legal alternatives to committing the crimes, in that they traveled frequently away from the locus of criminal activity and could have stayed away. For these reasons, as discussed further below, this Court should grant the Motion of the United States To Preclude Evidence or Argument Related to a Duress Defense.

**DISCUSSION**

A. **Defendants Are Precluded as a Matter of Law from Asserting a Duress Defense**

"A defense should not be submitted to the jury, even in a criminal case, if there is no credible evidence to support it." *United States v. Dunkin*, 438 F.3d 778, 780 (7th Cir. 2006) (criticizing admission of duress defense when defendant could not as a matter of law show no

reasonable opportunity to avoid the threatened harm). "Submission in such circumstances is just an invitation to jury nullification, a practice that is improper." *Id.*

To interpose the defense of duress, a defendant must show that:

(1) The defendant was under an unlawful and imminent threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; (2) the defendant had not recklessly or negligently placed herself in a situation in which it was probable that she would be forced to perform the criminal conduct; (3) the defendant had no reasonable, legal alternative to violating the law, that is, a chance both to refuse to perform the criminal act and also to avoid the threatened harm; and (4) that a direct causal relationship may be reasonably anticipated between the criminal act and the avoidance of the threatened harm.

*Dixon v. United States*, 548 U.S. 1, 4 n.2 (2006); *United States v. Sawyer,* 558 F.3d 705 711 (7th Cir. 2009); *United States v. Jocic,* 207 F.3d 889, 892 (7th Cir. 2000); 2 W. LaFave, *Substantive Criminal Law* §9.7(b) (2003 & Supp. 2008). When a defendant committed an ongoing crime, such as conspiracy, the defendant must have ceased committing the crime as soon as the claimed duress lost its coercive force. *United States v. Bailey*, 444 U.S. 394, 412-13 (1980).

Duress is normally an affirmative defense. It does not "negate criminal state of mind when the applicable offense requires a defendant to have acted knowingly or willfully; instead it allows the defendant to avoid liability because coercive conditions or necessity negates a conclusion of guilt even though the necessary mens rea was present." *Dixon,* 548 U.S. at 6-7. "Knowingly" is the mental state the United States is required to prove in this case, and thus, as in *Dixon*, if duress is a defense at all to these charges, it is an affirmative duress.[1] Defendants' assertion that duress is a substantive defense to specific intent crimes is simply wrong, foreclosed by *Dixon*, and any

---

[1] Some common law crimes require that the crime be done "maliciously," meaning with "the intent, without justification or excuse, to commit a wrongful act." *Dixon*, 548 U.S. at 6 n.4. In this limited circumstance, the Court has noted duress may be a substantive defense. *Id.* This, however, is not the case with the statutory conspiracy, bribery, and fraud offenses charged here.

language supporting that proposition in pre-*Dixon* cases, such as *United States v. Toney*, 27 F.3d 1245, 1250-51 (7th Cir. 1994), has been repudiated. *Dixon*, 548 U.S. at 6-8. Defendants are thus required to prove the elements of this affirmative defense to the jury by a preponderance of the evidence, and their assertion that the United States shoulders the burden to disprove duress beyond a reasonable doubt is, again, simply a misstatement of the law. *Dixon*, 548 U.S. at 5.

The Seventh Circuit has consistently held that a district court may properly deny a defendant the opportunity to introduce evidence supporting an affirmative defense by granting a motion in limine, so long as the facts proffered by the defendant to support the defense are insufficient as a matter of law to meet the minimum standard as to each of the elements of that defense. *United States v. Sahakian*, 453 F.3d 905, 910 (7th Cir. 2006) (holding rumor DC Blacks, a rival prison gang, had threatened to kill the leader of the Aryan Brotherhood, putting a "price on his head," was a "generalized future threat" insufficient to support a duress defense, and granting government's in limine motion to preclude its presentation).

  i.  ***Immediate or Impending Threat of Death***

Primary among the requirements in proving duress is that the defendant be under an immediate or impending threat of death or serious bodily injury. Immediacy is the key. *See e.g.,* *United States v. Mahalick*, 498 F.3d 475 479 (7th Cir. 2007) (describing defense of duress available in felon-in-possession-cases only where an individual, "in the heat of a dangerous moment disarms someone else, thereby possessing a gun briefly to prevent injury to himself"); *United States v. Bell*, 214 F.3d 1299, 1301 (11th Cir. 2000) (noting defense is reserved for extraordinary circumstances requiring "nothing less than immediate emergency"). Generalized or speculative fear of death or serious bodily injury is insufficient. *Sawyer*, 558 F.3d at 711 (holding

duress only applicable if someone was "present at all times" "forcing [defendant] to act under constant compulsion"). A threat of attack "by some unknown or unspecified assailant at some unknown time in the future" does not amount to duress. *United States v. Tokash*, 282 F.3d 962, 966 (7th Cir. 2002); *Sahakian*, 453 F.3d at 910.

In this case, even accepting defendants' proffer as true – though much of their factual recitation involves individuals and events unrelated to the Superseding Indictment[2] – defendants admit they cannot establish an immediate threat of death. As an initial matter, defendants never allege that West, Moore, or Boyd threatened to kill them or have them killed if they did not pay bribes to secure millions of dollars in lucrative, high profit margin contracts. The best defendants muster is that: "Major West informed Tahir Ramin that he *worked with* Enayatullah and that demands for bribes by West and his crew must be met. Enayatullah, in turn, informed Tahir Ramin that he was working in concert with Major West and that AZ must obey Major West." Resp. at 11. Defendants add: "One another occasion, Enayatullah ordered Tahir Ramin's vehicle off the road at gunpoint near BAF and told Tahir that AZ must obey West and those acting in concert with West. *Id.* at 12 (emphasis added). Statements of "working with" another and admonishments to "obey" some unspecified command or request are not, however, tantamount to

---

[2] Defendants' factual proffer is replete with vague insinuations and unexplained facts, which are ultimately irrelevant to this matter. Defendants, for example, claim that: "The Ramin Defendants made still more complaints to General Eikenberry . . . about the activities of other warlords and militia groups active at and around BAF." Resp. at 12-13. In fact, to the extent the Ramins dealt with General Eikenberry at all, it was years after the conspiratorial period, and on issues related to the construction of their water bottling plant in 2006 and later. In another example, defendants claim that Tahir Ramin described in his post-arrest interview "the military shakedown scheme as 'like extortion.'" Resp. at 13. In fact, Ramin was describing the conduct of a former military member, Umoja Furaha, an individual wholly unrelated to these charges, who had returned to Afghanistan and tried to secure a job from AZ years after the conspiracy. Ramin described Furaha's conduct trying to secure a job as "like extortion."

death threats leveled "as a means of enforcing bribes demanded by U.S. military personnel indicted in this case." Order Regarding Subpoena Requests at 2 (Doc. 678) (filed Oct. 12, 2010).

More importantly, these "threats" were not immediate or impending. Defendants admit as much, but seek to remedy this deficiency by plying the Court to adopt a "served notice" exception to the otherwise required element of immediacy. As their theory goes, once defendants had been "served notice" that the military official "joined forces with violent and heavily armed warlords, then their fear of death was "neither speculative nor generalized." Resp. at 13.

"Served notice" is not, however, a surrogate for immediacy. In fact, "served notice" is merely shorthand for "served notice of potential future violence." This construct was rejected in *Tokash*, where the leader of a prison gang, who had previously been targeted by racial violence, was told that he again had a "price on his head" by a rival prison gang. 282 F.3d at 970. Under these circumstances, Tokash had been "served notice," as it were. The Seventh Circuit, nevertheless, found the threats in that case generalized and speculative and, at most, threats of future harm by an unknown or unspecified assailant. *Id.; see also United States v. Harvey*, 516 F.3d 553, 555 (7th Cir. 2008) (holding no immediate threat despite that defendant had undoubtedly been served notice: his house had been shot at twice, he had been shot at, his brother's store had been firebombed, and plans were made to threaten his sister and her daughter). Adhering to this stringent immediacy requirement is good policy in every context: It allows for justification in the case of an emergency, while prohibiting defendants from deciding for themselves if and when to commit a crime, based on the fact they had been served notice of potential future violence. *See Tokash*, 282 F.3d at 970.

What defendants have described here as a "24/7 fear of death" is inherently a generalized and speculative fear of future violence. Defendants do not allege that any warlord was "present at all times" "forcing [defendants] to act under constant compulsion." *Sawyer*, 558 F.3d at 711. Defendants are, at most, claiming they labored under the generalized and speculative fear of attack by an unknown assailant at some unknown time in the future, if they did not pay bribes to West and Moore in return for lucrative military contracts. *Sahakian*, 453 F.3d at 909. Yet, even in inherently dangerous and lawless environments, such as a prison or in Afghanistan, a generalized threat still does not suffice as duress. *See Tokash*, 282 F.3d at 970 (noting "future" and "later" are opposites of "imminent," as required to support a defense of duress); *see also United States v. Harper*, 466 F.3d 634, 648 (8th Cir. 2006) (holding duress defense failed as a matter of law where defendants feared that sheriff's deputy might harm him in the future). For this reason alone, defendants' defense of duress fails as a matter of law.

  ii.  *Exhaust All Reasonable Legal Alternatives To Committing the Crime*

In addition to demonstrating an immediate and impending fear of death, in order to interpose a duress defense, defendants must demonstrate that violating the law was their "only reasonable alternative." *Bailey*, 444 U.S. at 410-11. Put another way, a defendant must demonstrate that he exhausted *all* reasonable, legal alternatives to violating the law. *See United States v. Alicea*, 837 F.2d 103, 106-07 (2d Cir. 1988) ("Where there is a reasonable opportunity to escape the threatened harm, the defendant must take reasonable steps to avail himself of that opportunity, whether by flight or by seeking the intervention of the appropriate authorities.").

The easiest way "both to refuse to do the criminal act and also to avoid the threatened harm" is to leave the coercive environment. *Bailey*, 444 U.S. at 410. If a defendant could have

removed himself from that which threatens him, but did not, he cannot later claim that duress excuses his criminal conduct. In *Jocic*, for example, a getaway driver for a bank robbery could have driven off or "sprinted 55 feet" while the robber was in the bank. 207 F.3d at 892-93. By not driving away when the opportunity arose, that defendant could not assert a duress defense. Likewise, in *United States v. Liu*, the defendant could not support a duress defense where he traveled extensively, both domestically and internationally, throughout the criminal conduct and "could have remained abroad." 960 F.2d 449, 454-55 (5th Cir. 1992).

In this case, defendants acknowledge that they frequently left Afghanistan and traveled often back to the United States and to many foreign countries, far away from the military members and warlords they now allege threatened to kill them if they did not pay bribes. Resp. at 15 n.12. Upon each departure, defendants put themselves in a position to refuse to do the criminal act and also to avoid the supposed threatened harm. Yet each time, defendants voluntarily returned to Afghanistan, back into the den of those that were supposedly going to kill them.

This fact is fatal to their duress defense. Defendants, nevertheless, urge this Court to permit a duress defense if defendants present "some foundational evidence" that they exhausted "simply one of several reasonable legal alternatives." Resp. at 15 n.12 (quotations omitted). Applying this one-of-many alternatives theory, defendants argue that because they claim they sought the help of the authorities, they should be permitted to interpose a duress defense. Defendants' proffer contains only vague descriptions of supposed "complaints," and never details what, specifically, they claim to have told the authorities. Nor, critically, do defendants ever claim to have alerted anyone that any U.S. military official, or anyone acting on their behalf, ever

threatened to kill them if they did not pay bribes.[3]  Resp. at 12-13.  But even if defendants had reported threats, pursuing one possible alternative does not mean that the only option left is to violate the law; instead, the law requires that no legal options remain, and only then may a defendant turn fleetingly to violating the law in order to avoid the lesser of evils.  As the Supreme Court and the Seventh Circuit have made abundantly clear, violating the law must be the "*only* reasonable alternative" before duress excuses criminal conduct.  *Bailey*, 444 U.S. at 411.  Here, like the defendants in *Liu* and *Jocic*, defendants could have gone away and stayed away from the warlords and military members they now claim threatened them.  Having failed to take advantage of this safe haven—on possibly more than one hundred trips in and out of Kabul—defendants cannot now claim they committed the charged crimes under duress.  Motion at 13.  Accordingly, this Court should grant the Motion of the United States To Exclude a Duress Defense.

> **B.    Law of the Case Does Not Bar a Decision on an Issue Never Before Considered**

Whether defendants have adequately supported each element of their proffered defense of duress has never before been raised, briefed or argued in this case.  This Court has previously granted motions by the United States to preclude evidence and argument related to an economic duress defense, Doc. 355, as well as to preclude a defense based on an equitable estoppel theory,

---

[3] In none of their opaque allegations do defendants claim to have reported the threats and duress they now claim to have faced at the hands of West and Moore.  Instead, in their proffer, defendants tiptoe around any clear description of what, exactly, they told the authorities, claiming that "complaints were made in the 2003-2005 time period;" that defendants "complained to Major Rogers about being extorted;" and that they "made still more complaints to General Eikenberry, among numerous other military officials, about the activities of other warlords and militia groups active at and around BAF."  Resp. at 12-13.

along the lines that because the United States paid warlords, defendants were excused from their crimes of paying bribes to United States service members.  Doc. 356.

Contrary to defendants' current mischaracterizations of the record, however, these rulings did not address the adequacy of defendants' proffered potential duress defense.  Indeed, at every occasion, the United States has expressed its doubts that defendants could ever meet the elements of a traditional duress defense.  *See, e.g.*, Hrg Tr. at 20-21 (May 24, 2010) ("[I]f the defense can make out a traditional duress defense, if they can show that there is this collaboration and that they legitimately feared imminent and impending death from anyone, then that would necessarily be the subject of a different motion and isn't really what we are talking about here."); *Id.* at 25 ("If he can do that, then we can evaluate those facts when they come when they come before us.  It might be subject to another motion, it may not."); *Id.* at 27 ("It's wrong that Mr. Miller says that they're allowed to present evidence of this.  They can make a proffer to the court and we can evaluate whether they have even the bare necessities of a traditional duress defense.  So to the extent that this order is going to exclude aspects of what they can present, that's true, but that which is reserved as a traditional duress defense may need to be subject of a following motion.  As far as I'm concerned, it seems dubious.").  As is now abundantly clear, defendants are unable to establish the elements of a duress defense, and accordingly, the United States respectfully requests that this Court grant its Motion To Preclude a Duress Defense.

**CONCLUSION**

For the foregoing reasons, defendants should be precluded from examining witnesses, adducing evidence, or tendering argument that duress excuses their criminal culpability.

DATED this 28th day of January, 2011.

                                        Respectfully submitted,

                                        /s/ *Mark W. Pletcher*
                                        MARK W. PLETCHER
                                        EMILY W. ALLEN
                                        Trial Attorneys, U.S. Department of Justice
                                        1400 New York Ave, N.W., 4th Floor
                                        Washington, D.C. 20530

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of January 2011, the foregoing REPLY OF THE UNITED STATES IN SUPPORT OF ITS MOTION TO PRECLUDE EVIDENCE AND ARGUMENT RELATED TO A DURESS DEFENSE was filed electronically and to the best of my knowledge, information and belief, counsel for defendants Christopher West, Patrick Boyd, Assad John Ramin, Tahir Ramin, AZ Corporation, Noor Alam, Northern Reconstruction Organization, Abdul Qudoos Bakhshi, and Naweed Bakhshi Company will be notified via ECF.

/s/ *Mark W. Pletcher*
Mark W. Pletcher
Trial Attorney, U.S. Department of Justice
1400 New York Ave, N.W., 4th Floor
Washington, D.C. 20530
Telephone: (202) 307-6186
mark.pletcher@usdoj.gov