# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Case No. 08 CR 669 |
| | ) | |
| CHRISTOPHER WEST, et al. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The defendants in this case are charged with offenses involving several allegedly interrelated bribery schemes involving contracts with the U.S. Army to provide bunkers and barriers at Bagram Air Field (BAF) in Afghanistan. On June 18, 2009, a grand jury returned a fifteen-count superseding indictment.

Defendants have moved to dismiss of counts one, three, ten, eleven and fourteen and the forfeiture count. They contend that when U.S. Army Criminal Investigation Division special agent Thomas Fikes testified before the grand jury, he gave false or misleading testimony and omitted exculpatory evidence.

District courts have limited supervisory authority over the proceedings of a grand jury. A court may dismiss an indictment based on prosecutorial misconduct involving the grand jury only if the misconduct prejudiced the defendant. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988).

The government is not required to present exculpatory evidence to a grand jury, and a district court cannot dismiss an indictment on this basis. *United States v. Williams*, 504 U.S. 36, 55 (1992). The Court thus denies defendants' motion to the

extent that it seeks dismissal based on the government's alleged failure to present exculpatory evidence.

By contrast, presentation of false testimony to the grand jury may, in appropriate circumstances, serve as a basis for dismissal. The government's knowing use of false testimony violates due process. *United States v. Useni*, 516 F.3d 634, 656 (7th Cir. 2008). But before a court may dismiss an indictment based on the government's knowing presentation of false testimony to the grand jury, the defendant must show "the grand jury's decision to indict was substantially influenced, or that there is 'grave doubt' that the decision to indict was substantially influenced, by testimony which was inappropriately before it." *Id.* at 656 (internal quotation marks omitted) (citing *Bank of Nova Scotia*, 487 U.S. at 256).

According to defendants, agent Fikes falsely testified that defendant Tahir Ramin admitted the involvement of defendant AZ Corporation in the alleged bunkers-and-barriers bribery scheme. Defendants also contend that agent Fikes misled the grand jury by testifying that Ramin described the scheme in substantially the same way as other participants in the scheme, Christopher West and Robert Moore.

In support of their contentions, defendants point to the handwritten notes of special agent Gary DeMartino regarding the interview of Ramin that DeMartino and Fikes conducted on August 25, 2008. These notes include a statement that AZ "delivered all the barrie[r]s on the call sheet"; that "[e]veryone (EHCO, NBC, NRO) *else* inflatted [sic] the numbers"; and that Ramin was "forced into sc[h]emes by service members." Defs.' Mot. (docket no. 719), Ex. A at 4-5 (emphasis added).

Defendants' contention that the government knowingly presented false testimony

2

to the grand jury is unpersuasive.  As DeMartino testified during a hearing before Judge Coar on a separate motion regarding Ramin's statement to the agents, Ramin gave contradictory answers during his interview.  DeMartino testified that Ramin initially did not admit to any wrongdoing but later admitted that he was aware of the bribery scheme and AZ's participation in it.  *See* Govt.'s Resp., Ex. C at 139-41 ("Originally he didn't admit to any bribery or paying off the service members or any wrongdoing.  And then it went on to where he said, you know, he knew of people paying bribes, other companies.  And then towards the end and at the end he finally admitted to his company and his brother being in charge of that, paying the service members for contracts").  DeMartino's handwritten interview corroborate his testimony regarding Ramin's admissions.  *See, e.g.*, Defs.' Mot., Ex. A at 4 ("You want your [bunkers and barriers] moved, West needs [to be] paid.  John paid"); *see also id.* ("John de[a]lt with West.  Maybe my brothers gave West money.  That is how it worked").

The notes of Ramin's interview suggest that he gave equivocal testimony about the extent to which he was personally involved in the scheme.  Fikes made this clear, however, when he testified before the grand jury.  *See* Govt.'s Resp., Ex. B at 28 ("He talked in somewhat general terms.  He a – the payments were made by he and his brother. . . .  His brother directed them, I think was more or less the context of how he put it.  So he hesitated to say explicitly [that] he did it").  Moreover, the notes also contain detailed descriptions of the bribery scheme, supporting Fikes's testimony that Tahir Ramin, John Ramin, and AZ all participated in the scheme to varying degrees.  *See, e.g.,* Defs.' Mot., Ex. A at 4 ("Cash was how it was handled"); *id.* at 6 ("It was a mood thing[,] $5 to $20,000.00 given to West/Moore for [bunkers and barriers]").

3

In summary, Ramin's initial denials during his interview do not exist in isolation. Other portions of DeMartino's notes of the interview indicate that Ramin contradicted his initial denial and provided details of his, John Ramin's, and AZ's involvement in the bribery scheme.

For these reasons, the Court is unpersuaded that the government knowingly presented false or misleading testimony by agent Fikes. In addition, as previously noted, Fikes' failure to include other exculpatory details from Ramin's interview in his grand jury testimony does not support dismissal of the indictment.

## Conclusion

For the reasons stated above, the Court denies defendants' motion to dismiss counts 1, 3, 10, 11, 14, and the forfeiture count [docket no. 719].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 7, 2011