**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| vs. | ) | Case No. 08 CR 669 |
| | ) | |
| **CHRISTOPHER WEST, et al.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In this decision, the Court considers the government's motion to quash portions of subpoenas to federal agencies (docket no. 730) and its motion *in limine* to preclude evidence or argument related to a duress defense (docket no. 705).

## Background

The defendants in this case are charged with a variety of offenses involving contracts the defendant entities had with the U.S. military to supply "bunkers and barriers" at Bagram Air Field (BAF) in Afghanistan. The government contends the defendants bribed U.S. military personnel to obtain the contracts and to get paid in full even though they delivered less than the full quantities for which the military had contracted. The indictment includes charges of bribery, fraud, and conspiracy.

The case was previously assigned to former Judge David Coar, who referred certain pretrial matters to Magistrate Judge Martin Ashman. The case was reassigned to the undersigned judge's docket due to Judge Coar's impending retirement. It is set for trial on April 25, 2011.

## Discussion

**1.     Government's motion to quash subpoenas (docket no. 730)**

The government has moved to quash, in part, certain subpoenas that defendants served well over a year ago on various federal agencies, seeking a variety of documents.  The propriety of the subpoenas was previously the subject of protracted litigation before both Magistrate Judge Ashman and Judge Coar.  In September 2010, Magistrate Judge Ashman made a series of rulings regarding the subpoenas, some of which Judge Coar modified in October 2010.  The Court wishes to make it clear at the outset that it does not intend to allow either side to relitigate matters concerning the subpoenas that were decided during the course of that protracted litigation.  Nor does it intend to allow either side to litigate now any matter that it had the opportunity to litigate before but chose to forego.[1]

With this background in mind, the Court considers the points raised in the government's motion to quash.

**a.     Requests 8, 9, and 12(d)**

Defendants note in their response to the government's motion that the government has not sought to quash requests 8, 9, and 12(d) of the subpoenas.  Judge Coar narrowed each of these requests in an order dated October 12, 2010 and directed the government to produce responsive records within fourteen days thereafter.  *See* Order of Oct. 12, 2010 (docket no. 678).  Both defendants and the Court had, and

---

[1] The Court also notes that it set a briefing schedule on the government's motion that contemplated the filing of a reply brief by the government.  The government did not file a reply brief within the time allowed and did not seek an extension of time.  The Court infers from this that the government voluntarily chose not to file a reply brief.

have, the right to assume that the government has complied with Judge Coar's order to produce documents responsive to those requests as narrowed. The government is directed to provide a written confirmation by no later than the close of business on March 14, 2011 that it has complied with these requests as modified by Judge Coar.

      **b.**      **Request 4**

In Request 4, defendants sought records concerning "any warlords and/or armed militia groups operating in the vicinity of [BAF] or other United States military installations in Afghanistan, or on the highways and/or roads to or from such locations." Defs.' Resp. to Govt.'s Mot. to Quash, Ex. 2. Magistrate Judge Ashman narrowed this request to "records that identify any warlord and/or armed militia groups operating within a fifteen-mile radius of [BAF] and/or Camp Salerno in Afghanistan from September 1, 2003 - June 30, 2006." Order of Sept. 7, 2010 (docket no. 637) at 1.

> Following an appeal by the government, Judge Coar ruled as follows:
>
> Production of all records identifying any warlord operating within 15 miles of [BAF] goes beyond what is necessary for this case. Defendants argue that the information is necessary to establish that warlords capable of doing violence exist and operate in the vicinity of BAF. The parties have expressed a willingness to discuss a stipulation that will attest to that fact. Defendants also seek to corroborate their testimony regarding certain individuals whom they claim to be warlords. If Defendants have a specific name in mind, then records relating to the status of that person may be relevant.
>
> The Court withholds ruling on Request #4 until the parties have had an opportunity to discuss a stipulation of fact that appropriately addresses these issues.

Order of Oct. 12, 2010 (docket no. 678) at 1.

There were two parts to Judge Coar's order concerning Request 4. First, he suggested a stipulation that warlords capable of doing violence operated in the vicinity

3

of BAF. Second, he also indicated that if defendants could identify particular warlords, records relating to those persons' status might be relevant.

The government says in its motion that following the entry of Judge Coar's order, it offered to stipulate that "warlords capable of doing violence exist and operate in the vicinity of BAF." Govt.'s Mot. to Quash at 3. The government does not identify the date of this proposal. The Court notes that this proposal addressed only the first part of Judge Coar's order concerning Request 4.

On December 13, 2010, about two months after Judge Coar's order, defense counsel sent the prosecutors a letter proposing a series of stipulations relating to Request 4. *Id.*, Ex. 2. In summary, defendants asked the government to stipulate that

- violent warlords and militia controlled access to BAF and operated within a 15 mile radius of BAF and other military installations to which AZ performed services for the U.S. military;

- some of those warlords and militia held contracts with the U.S. military and sought additional contracts;

- various U.S. military personnel, including some named as defendants in this case, made extortionate demands to contractors, including AZ, and defendant West referred to these personnel as a "family" that he led;

- certain members of the "family" worked with violent warlords, including one specifically named warlord who told one of the defendants that he was working with West;

- armed warlords invaded AZ's offices and threatened John Ramin when he resisted demands by one named U.S. military officer; a warlord shot at one of the Ramin defendants' vehicles at the direction of a member of the "family"; and West threatened other U.S. military officers into participating in extortion.

*Id.* at 2-3. It is clear beyond peradventure that defendants' proposals went far beyond what Judge Coar indicated was necessary and appropriate.

The Court rules as follows. First, the government's proposal to stipulate that "warlords capable of doing violence exist[ed] and operate[d] in the vicinity of BAF" is sufficient to cover the first part of Judge Coar's order concerning Request 4, so long as the stipulation includes the relevant time period, which both Magistrate Judge Ashman and Judge Coar appear to have found was September 1, 2003 through June 30, 2006. The government is directed to confirm in writing by the close of business on March 14, 2011 that it agrees with this slight modification to the stipulation. If so, that will resolve the first part of what Judge Coar addressed regarding Request 4.

The government's motion to quash conspicuously fails to address the second part of Judge Coar's order regarding Request 4. This may mean that the government believes it has complied with that part of the order; the Court simply cannot tell. One way or another, however, the government expresses no objection to the second part of Judge Coar's order regarding Request 4. The Court enforces Request 4 to the extent that Judge Coar indicated in his October 12 order. In other words, the government is required to produce records "relating to the status" of particular persons defendants have claimed to be warlords operating in the vicinity of BAF.

This part of Judge Coar's order concerning Request 4 contemplated that the defendants would provide the government with information identifying the particular persons they claimed to be warlords operating near BAF. Defendants waited two full months, until their letter of December 13, 2010, to provide the government with the names of alleged warlords. In that letter, defendants proposed a stipulation that identified a particular alleged warlord operating near BAF. *See* Govt.'s Mot. to Quash, Ex. B, p. 2 ¶ 7. Defendants also provided in the same letter, under a heading making it

5

clear that defendants were addressing the "warlord names" component of Judge Coar's order concerning Request 4, a list of three alleged warlords and number of persons allegedly affiliated with each of them. *See id.*, Ex. B, pp. 3-7. In the letter, however, defendants specifically identified only the first of these three alleged warlords as having operated in the vicinity of BAF; no reference to BAF appears in defendants' listing regarding the other two. *See id.* It is conceivable that defendants contend that the other two warlords and affiliated persons operated near BAF, but because they received reasonably clear instructions from Judge Coar and did not comply with them, the burden of the uncertainty falls on them.

The government is directed to produce, within ten days of this order, records "relating to the status" as a warlord or person affiliated with a warlord concerning:

- the person identified in defendants' proposed stipulation 7 contained in their December 13 letter; and

- the first alleged warlord and allegedly affiliated persons identified in defendants' December 13 letter at pages 3-5.

The Court does not know, of course, whether any of the subpoenaed agencies have any such records. The government is directed to confirm its compliance with this part of the present order in writing by March 21, 2011.

    **c.**    **Request 5**

In Request 5, defendants sought records concerning "armed attacks against trucks and/or other modes of transportation" on the highways to or from BAF and other U.S. military installations in Afghanistan. Defs.' Resp. to Govt.'s Mot. to Quash, Ex. 2. Magistrate Judge Ashman narrowed this to records concerning "armed attacks against

trucks and/or other modes of transportation within a fifteen-mile radius of BAF from September 1, 2003 - June 30, 2006." Order of Sept. 7, 2010 (docket no. 637) at 1.

On appeal, Judge Coar stated as follows:

> The Court orders the government to produce records relating to attacks on vehicles carrying bunkers and barriers owned and operated by Defendants. Defendants are ordered to provide the government with information of the incidents they have in mind, including but not limited to the date and location of the attacks, to the extent they possess such information.
>
> A stipulation to the fact that there have been attacks on vehicles within the vicinity of BAF can address [Defendants'] desire for corroboration of their state of mind. The Court withholds ruling on Request #5 until the parties have had an opportunity to discuss such a stipulation. The Court cautions that, to the extent that Request #5 may survive as modified by the magistrate judge, the Court will not permit records to be subpoenaed for the sole purpose of establishing the existence of a pervasive atmosphere of fear based on the acts of other individuals against other contractors.

Order of Oct. 12, 2010 (docket no. 678) at 1-2. Thus, as with Request 4, there were two parts to what Judge Coar proposed concerning Request 5: an order to produce records concerning particular attacks identified by defendants; and a proposal for a stipulation that there had been attacks on vehicles in the vicinity of BAF.

The government's motion to quash addresses both parts of Judge Coar's order concerning Request 5. In its motion, the government says that it proposed a stipulation that "there have been attacks on vehicles within the vicinity of BAF," while reserving the right to contest the relevance and admissibility of this fact. *See* Govt.'s Mot. to Quash at 5. This deals with the second part of Judge Coar's order concerning Request 5.

With regard to the first part of Judge Coar's order, defendants provided, in their December 13, 2010 letter, information regarding a handful of specific alleged attacks on AZ vehicles during 2004-05. *See* Govt.'s Mot. to Quash, Ex. B, p. 7. Alternatively, they

7

proposed a stipulation that during 2003-06, AZ vehicles were attacked or destroyed by warlords and others in Afghanistan who sought to extort or rob the drivers and that in some of those attacks, bunkers and barriers destined for shipment to the U.S. military and/or records concerning those bunkers or barriers were destroyed. *Id.* Defendants stated in their letter that if the government agreed to this stipulation, they would withdraw Request 5.

Defendants' proposed stipulation went well beyond what Judge Coar proposed in the second part of his order concerning Request 5. The government's proposed stipulation, by contrast, sufficiently addressed that portion of the order, so long as it is modified to apply to the same September 1, 2003 to June 30, 2006 time period discussed earlier. The government is directed to confirm in writing by the close of business on March 11, 2011 that it agrees with this slight modification to the stipulation. If so, that will resolve the second part of what Judge Coar addressed regarding Request 5.

With regard to the first part of Judge Coar's order, the government committed in its motion to quash to produce by January 14, 2011 any records concerning the particular alleged attacks identified by defendants in their December 13 letter, consistent with the procedures mandated by the Classified Information Procedures Act, as necessary. *See* Govt.'s Mot. to Quash at 4. The Court directs the government to provide by the close of business on March 14, 2011 written confirmation that it has complied with this undertaking concerning the particular alleged attacks referenced in defendants' December 13 letter.

8

### d. Request 6

In Request 6, defendants sought records "referring or relating to payments or agreements between the United States (or any agency thereof) and any warlord and/or armed militia group operating in the vicinity of [BAF] or other United States military installations in Afghanistan." Defs.' Resp. to Govt.'s Mot. to Quash, Ex. 2. Magistrate Judge Ashman narrowed this, directing the government to produce "any and all contracts between the United States military and warlords operating within a fifteen-mile radius of BAF from September 1, 2003 - June 30, 2006." Order of Sept. 7, 2010 (docket no. 637) at 1.

Judge Coar further narrowed Request 6, directing the subpoenaed agencies to produce

> all contracts between the U.S. military and any individual alleged by Defendants to have threatened them with death or bodily injury as a means of enforcing bribes demanded by the U.S. military personnel indicted in this case. The above agencies must also produce all contracts made between any of the U.S. military officials indicted in this case and warlords operating within a 15-mile radius of BAF. This request pertains to contracts from September 1, 2003 to June 30, 2006.
>
> If Defendants are unable to identify the warlords that allegedly threatened them, the Court will entertain a motion to quash.

Order of Oct. 12, 2010 (docket no. 678) at 2. Again, there were two parts to Judge Coar's order regarding this request. The first part required the government to produce contracts with persons that defendants would identify as having threatened them; the second required the government to produce all contracts between indicted U.S. military personnel and warlords near BAF.

In their December 13, 2010 letter, defendants identified one person they claimed

9

threatened them in the manner described in the first part of Judge Coar's order regarding Request 6.  In its motion to quash, the government committed to produce "any contract records relating to this individual."  Govt.'s Mot. to Quash at 5.  The government is directed to confirm in writing, by the close of business on March 14, 2011, that it has complied with this commitment.

The government's motion to quash, however, stops there.  Specifically, the government makes no claim that it has complied with the second part of Judge Coar's order regarding Request 6.  The Court notes, again, that Judge Coar directed compliance within fourteen days of October 12, 2010.  The government does not have the privilege of ignoring the second part of Judge Coar's order regarding Request 6.  The Court enforces Judge Coar's order pursuant to its terms.  The government is directed to confirm in writing by the close of business on March 14, 2011 that it has complied with the part of Judge Coar's order concerning Request 6 that directs the subpoenaed agencies to "produce all contracts made between any of the U.S. military officials indicted in this case and warlords operating within a 15-mile radius of BAF . . . from September 1, 2003 to June 30, 2006."

e. **Request 12(c)**

In Request 12(c), defendants sought records relating to interactions between the Ramin defendants and AZ personnel with particular U.S. military personnel, including those relating to work stoppages caused by the Taliban or warlords at the Aria Zameen water bottling plant and other matters concerning such work stoppages.  Defs.' Resp. to Govt.'s Mot. to Quash, Ex. 2.  Magistrate Judge Ashman narrowed this, directing the subpoenaed agencies to produce records concerning "work stoppages at the Aria

Zamen [sic] water bottling plant constructed by AZ Corporation in the vicinity of BAF." Order of Sept. 7, 2010 (docket no. 637) at 2.

Judge Coar said that "[a]s written, [this] request is unreasonably overbroad. The Court withholds ruling on this request until Defendants produce the relevant timeframe for the events at issue in this request." Order of Oct. 12, 2010 (docket no. 678) at 2. During the hearing that led to the October 12 order, Judge Coar commented that if the work stoppage "happened after the alleged conspiracy, it's irrelevant." Oct. 12, 2010 Tr. at 24 (Govt.'s Mot. to Quash, Ex. C). Judge Coar did not, however, enter a follow-up order, nor did the government ask this Court to do so at any time prior to the present motion to quash.

In their December 13, 2010 letter referenced earlier, the defendants stated that the work stoppages occurred in 2006. Govt.'s Mot. to Quash, Ex. B, p. 9. According to the superseding indictment, the charged conspiracies ran until, at the latest, June 2005. Thus if the Court adopts Judge Coar's comments at the October 12 hearing, that is the end of the matter.

In their response to the government's motion, defendants say that the relevant time period should not stop with the end of the period of the charged conspiracies but rather should extend through the time period covered by the government's other-act evidence. Defendants' response does not disclose the time period covered by what they understand the other-act evidence to involve, so the response is entirely unilluminating in this regard. And because the government did not file a reply as ordered, it, too, has left the Court in the dark. The Court has hunted on its own to try to figure out the pertinent time frames.

In its objections to Magistrate Judge Ashman's order, the government said that evidence relating to work stoppages at the water bottling plant was irrelevant because the bribery allegations concerned the period of 2004-05, before construction of the plant had begun. *See* Govt.'s Objs. to Mag. Judge's Order (docket no. 649) at 11. In response to this particular objection, defendants noted that "the government has issued a broad 404(b) notice without a time frame reference or any specificity about the scope of the government's anticipated 404(b) case." *See* Defs.' Resp. to Govt.'s Objs. to Mag. Judge's Order (docket no. 671) at 13.[2] In various parts of Judge Coar's order, he effectively rejected the government's position on this point. Specifically, he did not impose a 2005 cutoff date for document production but rather adopted the September 1, 2003 - June 30, 2006 time period that Magistrate Judge Ashman imposed in his September 7, 2010 order. This time period went at least one year beyond the period of the conspiracy charged in the indictment in the present case.

For their part, defendants did not object to the June 30, 2006 cutoff date that Magistrate Judge Ashman imposed in his September 7, 2010 order. By the time of the appeal to Judge Coar, defendants appear to have been on notice that at least one of the matters referenced in the government's Rule 404(b) notice might extend beyond the June 30, 2006 cutoff date. Specifically, the indictment of Tahir Ramin and AZ Corp. in the District of Hawaii for the alleged Finch bribery scheme, which the government referenced in its Rule 404(b) notice in the present case, alleges a conspiracy extending through April 2009. Despite this, defendants did not ask Judge Coar to expand the time

---

[2] This is an accurate characterization of the government's Rule 404(b) notices. *See id.*, Ex. 5.

12

period that Magistrate Judge Ashman had set.

Judge Coar never made a definitive ruling regarding the temporal scope of Request 12(c). At this late date, the Court will not permit either side to relitigate the matter or to raise points they could have made in the earlier litigation over the subpoenas but chose not to make. The Court adopts the same June 30, 2006 cutoff date that Magistrate Judge Ashman imposed and Judge Coar adopted for other provisions of the subpoenas. Request 12(c) is enforced, with that modification.

The Court notes that it has not yet been called upon to address the admissibility of other-act evidence that the government actually intends to offer.[3] One of the factors the Court will consider, if appropriate, is whether the limitations imposed upon the subpoenas will prevent the defendants from fully and fairly addressing any particular other-act evidence the government offers.

2.      **Government's motion *in limine* to preclude duress defense (docket no. 705)**

The Court denies as premature the government's motion to preclude evidence or argument regarding a defense of duress. The motion was filed before completion of the government's document production under Rule 16 and pursuant to the subpoenas just addressed. As such, the motion is premature.

**Conclusion**

For the reasons stated above, the Court grants the government's motion to quash in part and denies it in part [docket no. 730] and denies without prejudice the

---

[3] The Court denied a defense motion to bar any evidence concerning the Hawaii charges on the ground that the government abused the grand jury process to obtain that indictment. The Court has not yet been called upon to consider, however, whether evidence concerning the Hawaii charges is relevant and admissible.

government's motion *in limine* to preclude a duress defense [docket no. 705]. The Court directs the government to comply with the requirements imposed in various parts of Section 1 of this order as stated therein.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 9, 2011